IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:23-CV-80-FL

| | |
|---|---|
| ALTITUDE ACADEMY OF BARBERING LLC and RODNEY BULLOCK, ) ) ) Plaintiffs, ) ) v. ) ) PITT COMMUNITY COLLEGE, WENDY DUNBAR in her individual capacity, GAIL NICHOLAS in her individual capacity, NC BOARD OF BARBER AND ELECTROLYSIS EXAMINERS, WILLIAM BAIN JONES in his individual capacity, WAYNE MIXON in his individual capacity, and ESTATE OF THOMAS GOULD, ) ) ) ) ) ) ) ) ) ) ) ) ) ) Defendants. ) | ORDER |

This matter is before the court upon defendants' motions to dismiss under Rules 12(b)(1) and (b)(6) (DE 110, 115, 117, 119). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted.

### STATEMENT OF THE CASE

Plaintiffs began this constitutional tort suit by filing complaint May 12, 2023. Plaintiffs have since amended their complaint twice, once June 15, 2023, and again December 30, 2023.[1] In the operative amended complaint, plaintiffs assert the following claims: 1) violation of the Takings Clause and conspiracy to violate both that clause and substantive due process, all under § 1983;

---

[1] The court constructively amends the case caption to reflect plaintiffs' voluntary dismissal of Angela Bullock as a plaintiff and Deana Labriola as a defendant March 5, 2024.

and 2) fraud under North Carolina common law. Plaintiffs request injunctive relief, $20,075,000.00 in compensatory damages, punitive damages, and costs and fees.

Defendants filed the instant motions to dismiss the claims against them in January and February, 2024, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiffs have responded in opposition, and two groups of defendants have replied.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Plaintiff Altitude Academy ("AA") is an LLC organized under North Carolina law, owned by plaintiff Rodney Bullock ("Bullock"). (Compl. (DE 107) ¶¶ 5, 8).[2] Defendant Pitt Community College ("PCC") is a North Carolina Community College located in Winterville, North Carolina. (Id. ¶ 11). The estate of Thomas Gould represents Thomas Gould, the former vice president of PCC. (Id. ¶ 12).[3] Defendants Wendy Dunbar ("Dunbar") and Gail Nichols ("Nichols") were employees of PCC. (Id. ¶¶ 13–14). Defendant North Carolina Board of Barber and Electrolysis Examiners (the "board") is a statutorily authorized extension of the North Carolina executive branch, whose current executive director is defendant Dennis Seavers ("Seavers"), whose former executive director from 2008 to 2014 was defendant Luke Mixon ("Mixon"), and whose former legal counsel was defendant William Jones ("Jones"). (Id. ¶¶ 16–19).

Plaintiff Bullock obtained a barber license in 2006, which has always maintained an active status, and he obtained a license to instruct in 2008, which has also always maintained an active

---

[2] All references in this order to the complaint refer to the operative amended complaint at docket entry (DE) 107.

[3] References to "Gould" are to either the natural person Thomas Gould, or to his estate, as appropriate based on the timing of the referenced event.

status. (Id. ¶ 20(a)–(b)). Bullock's license was placed on five-year probation at an unspecified time, but remained active. (Id. ¶ 20(d)(ii)). Defendant board issued Bullock a permit to operate a barber school October 21, 2008, at which point Bullock opened plaintiff AA. (Id. ¶ 20(d)). Bullock obtained a property for AA in 2011, which the board inspected and approved. (Id. ¶ 20(e)). Bullock provided services to defendant PCC from 2011 to 2021 under a "vendor contract." (Id. ¶ 8). In 2011, defendant Jones "began constantly contacting and writing to" former plaintiff Angela Bullock attempting to convince her to persuade plaintiff Bullock to surrender his barber school permit. (Id. ¶ 21). Jones also requested and received access to the "vendor contract" between PCC and AA, and provided an application to manage a barber school for PCC to operate at AA's location. (Id. ¶ 22).

A defendant PCC official contacted defendant board, which informed PCC that it could not obtain a barber school license because it did not own a barber school. (Id. ¶ 23–25). Various board and PCC actors discussed ways for PCC to obtain such a permit, including by possible ways of working with AA. (See id. ¶¶ 26–32). Defendant Jones then contacted former plaintiff Angela Bullock again, stating that an arrangement between PCC and AA would be "only an administrative change" but that failure to reach a solution would lead to negative consequences given plaintiff Bullock's probation issues. (Id. ¶ 33–34). Following further discussions between the board and PCC, defendant Mixon told a board official that the board simply wanted to "punish" plaintiffs, (id. ¶ 36), and that PCC and AA would have to adjust their arrangement to come into compliance with state law. (Id.).

Defendant board held a quarterly meeting February 17, 2014. The meeting's minutes note that defendant PCC and plaintiff AA had agreed to cease and desist their business arrangement, and for PCC to become the school permit holder and to retain plaintiff Bullock as an instructor.

3

(Id. ¶ 38). On March 7, 2014, defendant Dunbar then ordered plaintiff Bullock to sign a document stating that he was a licensed barber school instructor, on pain of license revocation. (Id. ¶¶ 40–41).

Defendant Nichols mailed to defendant board, on defendant Jones's orders, an allegedly fraudulent application representing that defendant PCC was the owner of the barber school located on plaintiff Bullock's property, and a "management plan" containing various other alleged misrepresentations about PCC and AA. (See id. ¶ 42). Defendant board issued permit 33 (the "permit") to PCC using Bullock's address, and renewed it from 2014 to 2021. (Id. ¶ 43). PCC instructed Bullock to remove his AA sign and replace it with "[PCC] Barber College," and to remove from the premises all materials with AA's name on them. (Id. ¶ 45).

On May 20, 2014, former defendant Labriola contacted defendant Nichols and another defendant PCC official to discuss plaintiffs' advertising of the school as "[PCC]/[AA]," which she called an "ongoing violation" of the management plan. (Id. ¶ 47). Jones and Labriola then resumed discussions, during which Labriola stated that the board did not trust Bullock, and that the "safest" path would be to remove any references to AA from any advertisements. (Id. ¶ 48). Labriola noted in a conversation with another PCC official that the board lacked a "warm feeling" for Bullock and merely "tolerated him" because of his relationship with PCC, and that she believed Bullock should stop using the name AA for fear of adverse board action. (See id. ¶ 49). Labriola stated to the PCC official that plaintiffs should discontinue AA's relation to PCC, that the board disliked Bullock and was "looking for any reason . . . to take his license away," and that she recommended the prohibition of any use of AA's name, letterhead, and signage in connection with PCC. (See id. ¶ 50).

4

# COURT'S DISCUSSION

A.      Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[4]  Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219.  Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

---

[4]      Internal citations and quotation marks are omitted from all citations unless otherwise specified.

B.   Analysis

The numerous defendants assert different arguments across their respective motions. The court addresses the motions sequentially.

1.   Board and Seavers's Motion (DE 111)

The board and Seavers, its current executive director (together, "board defendants"), move to dismiss on the basis of sovereign immunity and the statute of limitations. The court agrees with the former point and so does not reach the latter.

Board defendants advance their immunity argument through both the Eleventh Amendment and North Carolina's state-law sovereign immunity doctrine.

The Eleventh Amendment provides immunity from suit to states and their agencies and arms. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984). But it does not bar requests for prospective relief, such as injunctive or declaratory relief to remedy ongoing harms, against state officials. See Antricam v. Odom, 290 F.3d 178, 188–90 (4th Cir. 2002); Bragg v. W. Va. Coal Ass'n, 248 F.3d 275, 292 (4th Cir. 2001).

This exception applies only to state officials, not to state agencies or arms. See Biggs v. N.C. Dep't of Public Safety, 953 F.3d 236, 242 (4th Cir. 2020) (recognizing that "state officials – not state institutions – can be sued for equitable relief under § 1983" (emphasis in original)); Lee-Thomas v. Prince George's Cnty. Public Schs., 666 F.3d 244, 248–49 (4th Cir. 2012) (discussing only "officers"); Rehab. Ass'n of Va. v. Kozlowski, 42 F.3d 1444, 1449 (4th Cir. 1994) (holding exception applicable because plaintiff sought prospective relief against state official, not state or agency).

Here, the board is a statutorily authorized agency of the state of North Carolina. See N.C. Gen. Stat. § 86B-1. It is therefore immune from suit. See, e.g., Biggs, 953 F.3d at 242; Abbott v.

6

N.C. Bd. of Nursing, 177 N.C. App. 45, 47 (2006) (holding indistinguishably situated nursing regulatory body to be state agency under North Carolina law).

Plaintiffs argue that the Eleventh Amendment does not protect the board because it receives no tax revenue. (Pls' Br. Board 9). Board defendants dispute whether plaintiffs have introduced any competent evidence for this point, (see Bd Reply Br. (DE 130) 3), but even assuming without deciding that the board indeed receives no public funds, it is still a state agency. To evaluate whether an entity is a state agency entitled to Eleventh Amendment immunity, the court considers four factors: 1) whether any judgment would be paid by the state treasury; 2) whether the entity has significant autonomy from the state; 3) whether the entity is involved with state-wide or merely local concerns; and 4) how state law treats the entity. See Ristow v. S.C. Ports Auth., 58 F.3d 1051, 1052 n.3 (4th Cir. 1995).

Receipt of public funds is thus only one factor, and the others all weigh strongly in favor of immunity. Under the second factor, the board's members are appointed by the North Carolina General Assembly and Governor, and subject to removal by the Governor; it is also required to remit all funds it collects to the state treasury. See generally N.C. Gen. Stat. § 86B-1. The board therefore lacks significant autonomy from the state. Under the third, the board regulates barbers on a state-wide basis. Under the fourth, the board exists as a creature of the state under statute, and the North Carolina courts have recognized similar licensing boards as state agencies. See Abbott, 177 N.C. App. at 47. The court therefore rejects plaintiffs' argument that the board's lack of public funding defeats its Eleventh Amendment immunity.

Plaintiffs also argue that the board lacks immunity against the prospective relief they seek. These contentions ignore the distinction recognized in Biggs: suits seeking prospective relief against state officials are permitted under the Eleventh Amendment, but such suits against state

7

agencies are not.  See Biggs, 953 F.3d at 242; Bland v. Roberts, 730 F.3d 368, 389–90 (4th Cir. 2013); see also, e.g., Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007).

In addition, any equitable relief against Seavers in his official capacity is prohibited because plaintiffs allege no ongoing harm, and prospective relief against an official cannot rest solely on exposure to past wrongful conduct.  See, e.g., Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018); Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998).  Plaintiffs' opposition brief asserts that their request for injunctive relief would protect the present and future rights of third parties, (see Pls' Br. Board (DE 121) 8), but plaintiffs lack standing to vindicate the rights of others.  Warth v. Seldin, 422 U.S. 490, 499 (1975).

Plaintiffs' claims against the board and Seavers's official capacity therefore fail.

Plaintiffs also assert claims against Seavers in his individual capacity, but these fare no better.  As board defendants accurately note, the mere inclusion of the words "individual capacity" in a complaint's caption does not automatically sidestep the Eleventh Amendment, if the claim is effectively against the state.  See Martin v. Wood, 772 F.3d 192, 195–96 (4th Cir. 2014).  To evaluate whether an individual capacity claim is really against the state, the court considers five factors: 1) whether the allegedly unlawful conduct was "tied inextricably to . . . official duties"; 2) whether, if the state officials had authorized the desired relief at the outset, the state would have borne the burden; 3) whether a judgment would be "institutional and official in character" such that it would operate against the state; 4) whether the official's actions were taken to further personal interests distinct from the state's interests; and 5) whether the official's actions were ultra vires.  See id. at 196.

These factors weigh in Seavers's favor here.  The complaint contains no allegation that Seavers's actions were ultra vires, or that he acted out of personal interests or received any personal

benefit under the fourth factor. Under the second and third factors, plaintiffs' requested relief against defendant Seavers is an injunction interfering directly with the official operations and institutional decision-making of the board, a state agency as discussed above. (See Compl. 32).[5] Finally, the few allegations against Seavers concern his official conduct as a board member, so the first factor also weighs in favor of immunity. (See id. ¶¶ 55–56, 61, 67, 77, 80).[6] Plaintiffs offer no substantial argument against this conclusion. (See Pls' Br. Board 10).

The court concludes that notwithstanding the complaint's caption, the state is the real party in interest in plaintiffs' individual capacity claims against Seavers, which are therefore barred by the Eleventh Amendment. See Martin, 772 F.3d at 195–96; see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997); Lizzi v. Alexander, 255 F.3d 128, 136–37 (4th Cir. 2001), abrogated on other grounds by Nev. Dep't of Human Resources v. Hibbs, 528 U.S. 721 (2003). Because all of plaintiffs' claims against the board defendants are blocked by the Eleventh Amendment, the court grants their motion to dismiss.

    2.    Jones and Mixon's Motion (DE 119)

Defendants Jones and Mixon move to dismiss on several grounds, among them that plaintiffs' complaint is untimely. The court agrees that dismissal is warranted on this basis.

Because § 1983 lacks its own statute of limitations, courts use the statute of limitations applicable to personal injury actions in the underlying state. Tommy Davis Constr., Inc. v. Cape Fear Public Utility Auth., 807 F.3d 62, 66–67 (4th Cir. 2015). In North Carolina, the § 1983 statute of limitations is therefore three years. Id. at 67.

---

[5]    The complaint's prayer for relief is numbered separately from its body, so this citation is to pages, not paragraphs.

[6]    This citation actually overrepresents Seavers's presence in the complaint; in most of plaintiffs' allegations cited above, Seavers is summarily lumped together with Jones and Mixon; the complaint contains virtually no content addressed to the conduct of Seavers specifically.

9

Plaintiffs' fraud claim under North Carolina common law similarly has a three-year statute of limitations, which begins to run upon the aggrieved party's discovery of the facts constituting the fraud. N.C. Gen. Stat. § 1–52(9).

As Jones and Mixon note, the complaint contains no allegations of any misconduct by any defendant after 2014. Plaintiffs' original complaint, filed in May, 2023, was therefore nearly a decade untimely.

Plaintiffs' only response to this line of argument is that the continuing wrong doctrine should apply here, because plaintiff Bullock did not learn of defendants' alleged fraud until 2021. (See Pls' Br. Mixon (DE 131) 7). But these allegations appear nowhere in the complaint; instead, they surface for the first time in plaintiffs' opposition brief. And "it is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). Further, plaintiffs' only citations to support their discovery rule arguments are to paragraphs of the complaint that do not exist, (see Pls' Br. Mixon 7 (citing to ¶ 121 of the complaint, which ends at ¶ 85)), and to exhibits which were not attached to the complaint or referenced therein, which the court also may not consider. See, e.g., Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).

Furthermore, two out-of-circuit cases plaintiffs cite for the contrary point would not govern here, even if they controlled. In both cases, the court stated that a district court may consider documents attached to, or squarely referenced in, a complaint. See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000). Neither is the case here: plaintiffs' exhibits are not attached to, or anywhere referenced in, their complaint. The court therefore cannot consider them.

10

Because the complaint contains no allegations of any misconduct by Jones or Mixon later than 2014, plaintiffs' complaint is several years untimely. The court accordingly grants Jones and Mixon's motion to dismiss on this basis.

3. Employees' Motion (DE 115)

Third, defendants Gould, Dunbar, and Nichols (together, the "employees") move to dismiss plaintiffs' claims against them on a number of grounds, among them that plaintiffs' claims are untimely.

The parties' arguments on timeliness parallel the contentions made by Jones and Mixon. Plaintiffs' complaint contains no allegations concerning conduct later than 2014, and plaintiffs attempt to avoid the statute of limitations by pointing to out-of-the-pleadings evidence the court cannot consider at this stage. (See Pls' Br. Emps. (DE 132) 9–12; Emps' Br. (DE 116) 11–15).

Dismissal of plaintiffs' claims against the employees is therefore appropriate for the same reasons as dismissal of the claims against Jones and Mixon.

4. PCC's Motion (DE 117)

Finally, defendant PCC moves to dismiss the claims against it on several grounds, including the Eleventh Amendment. The court agrees that dismissal on this basis is warranted, and so does not reach PCC's other arguments.

As discussed at greater length above, the Eleventh Amendment confers absolute immunity from suit on state agencies and instrumentalities, even against prospective relief. See Biggs, 953 F.3d at 242.

Public universities generally, and community colleges organized under North Carolina law specifically, are instrumentalities of the state entitled to this immunity. See, e.g., Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 262–63 (4th Cir. 2005) (public universities generally);

11

Blackburn v. Trs. of Guilford Cmty. Coll., 822 F. Supp. 2d 539, 542–43 (M.D.N.C. 2011) (North Carolina community colleges); see also N.C. Gen. Stat. § 115D–31 (establishing series of close financial and legal arrangements between community colleges and the state of North Carolina).

PCC is therefore shielded by the Eleventh Amendment, and plaintiffs make no allegation of waiver. Plaintiffs also make no response, generally, to PCC's Eleventh Amendment points, instead addressing only sovereign immunity under North Carolina state doctrines. (See Pls' Br. PCC (DE 133) 4–7). Thus, plaintiffs' claims against PCC are barred by sovereign immunity under the Eleventh Amendment.

## CONCLUSION

Based on the forgoing, the motions to dismiss presented by defendants (DE 110, 115, 117, 119) are GRANTED. Plaintiffs' claims against Jones, Mixon, and the employee defendants are DISMISSED for failure to state a claim under Rule 12(b)(6). Plaintiffs' claims against board defendants and PCC are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction under Rule 12(b)(1). The clerk is DIRECTED to close this case.

SO ORDERED, this the 19th day of April, 2024,

_____
LOUISE W. FLANAGAN
United States District Judge